NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Carlos I. MERA, | |
| Plaintiff, | Civil No. 16-5361 (RBK) |
| v. | **OPINION** |
| Carolyn W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Plaintiff Carlos I. Mera for review of the final decision of the Commissioner of Social Security. The Commissioner denied Plaintiff's application for Social Security Disability Insurance ("SSDI") benefits, finding Plaintiff was not disabled as defined by the Social Security Act. As explained below, the decision of the Commissioner is **AFFIRMED**.

I.     PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was 52 at the date of the alleged onset of his disability in 2011. He had formerly worked as a garment grader and marker before losing his job in 2011 and drawing unemployment benefits for 18 months. (Pl. Br. at 10-11.) Plaintiff claims he has severe pain in his lower back and hips, is incapable of standing for too long in one position, is obese, and experiences constant pain when sitting or walking. (*Id*. at 7.) Plaintiff has previously reported dizziness and blurry vision during an emergency room visit. (*Id.*) Plaintiff has been diagnosed with sciatic nerve injury and acute lower back strain. (*Id.*) He claims he has difficulty tying his shoes and taking showers. (*Id.*

1

at 7-8.) A doctor has noted before, however, that Plaintiff faced no difficulty ambulating. (*Id.*) Plaintiff is also depressed, and at the time of the hearing appears to have had undergone at least one psychiatric consultation in February 2013 (*Id.* at 8-10.) Plaintiff has good social judgment, but apparently a poor attention span. (*Id.*) At the time of the decision on review today, Plaintiff took a variety of medications treating depression, pain, and other maladies. (*Id.*)

Plaintiff filed an application for SSDI benefits on October 11, 2012, alleging an onset date of January 14, 2011 for his disability. The Commissioner denied this application on April 10, 2013 and later denied reconsideration. Plaintiff then requested a hearing by an Administrative Law Judge, and ALJ Ronald L. Waldman presided over a January 8, 2015 video hearing. On March 16, 2015, the ALJ issued an unfavorable decision to Plaintiff. On May 7, 2015, Plaintiff then filed an application for review by the Appeals Council, as well as an application for Supplemental Security Income ("SSI") benefits. After the Appeals Council denied review on July 6, 2015, Plaintiff then sought review by this Court under 42 U.S.C. § 405(g).

It is the ALJ's March 16, 2015 decision that we review today. The ALJ evaluated whether Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act mandates a five-step sequential evaluation process in evaluating disability claims. 20 C.F.R. § 404.1520. The Commissioner must consider whether Plaintiff (1) was engaged in substantial gainful employment during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that meets or equals the requirements of a listed impairment; (4) had the "residual functional capacity" ("RFC") to return to his past relevant

work; and (5) if not, whether he could perform other work in the national economy. *Id.* For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on his RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *Id.*

Applying these considerations, the ALJ held that Plaintiff was not engaging in substantial gainful employment and that he had the severe impairments of lumbar disc narrowing and osteoarthritis of both hips. However, at step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The ALJ noted that Plaintiff's motor and sensory examinations appeared normal and there was no evidence of gross anatomical deformity of the hips or knees, and thus was not disabled under step three's analysis.

Proceeding to step four, the ALJ evaluated Plaintiff's RFC, reasoning that Plaintiff had the capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a):

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Indeed, the ALJ found Plaintiff's abilities exceeded this level of work, relying on expert medical assessments to find that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk two hours in an eight-hour workday, sit six hours in an eight-hour workday, and stoop occasionally, but could not kneel, crouch, or crawl. In reaching this

3

determination, the ALJ applied the process set forth in 20 C.F.R. § 404.1529, finding that Plaintiff's impairments could reasonably be expected to cause the symptoms Plaintiff alleged—symptoms including lower back pain, difficulty standing and constant pain—but that Plaintiff's statements were "not entirely credible." Specifically, the ALJ noted that some of Plaintiff's testimony contradicted his allegations. For example, Plaintiff stated he was too busy to see a psychologist but also stated that he habitually stayed at home sitting for stretches as long as ten hours. Plaintiff had also never sought treatment for his back, stating he had not done so because he lacked insurance. The ALJ concluded that Plaintiff was not severely limited by cognitive or psychological difficulties, including depression. He noted that the basis for Plaintiff's claims were a one-time examination placing Plaintiff's limitations in a "mild but not greater" range that did not limit daily living or social functioning.

The ALJ noted that Plaintiff had testified that he could have done his past work until two years before the date of the 2015 hearing. But Plaintiff claimed his onset date was January 14, 2011. We note this exchange in particular:

> Q [ALJ]: . . . Let's assume that six months after you stopped working [in 2011], you were looking for the same job and you found it. . . . Would you have taken the job?
>
> A [Plaintiff]: Yes.
>
> Q: You would have taken it, okay. And how long do you think you could have kept on doing that type of job, six months, a year, two years, could you do it today?
>
> A: Now no.
>
> Q: Not today, okay. So tell me at what time could you no longer do that job? . . .
>
> A: Yeah, like two years ago.
>
> Q: . . . So what you're saying to me is, Judge, had I not been fired, I could have done the work I was doing for another two years, but

4

|        |                                                                                                                                                       |
|--------|-------------------------------------------------------------------------------------------------------------------------------------------------------|
|        | Judge, in the last two years, my pain has become more severe and I can't do that type of work anymore. Is that what you're telling me?                |
| A:     | Yes, sir.                                                                                                                                             |
| ALJ:   | It is, okay. (Perusing documents.) And Counsel, I know we have a lot of testimony to take, but obviously I'm to make that part of my analysis . . .   |
| Atty:  | Right, okay.                                                                                                                                          |

(Tr. at 11-12.) The ALJ concluded nothing was preventing Plaintiff from performing his past relevant work, work classified as light skilled work that Plaintiff had previously performed as sedentary work. And as such, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from January 14, 2011 through March 16, 2015, the date of decision.

Plaintiff challenges the ALJ's decision on several grounds. He argues the ALJ did not give adequate consideration to (1) diagnostic testing indicating Plaintiff has "degenerative arthritic changes present within the spine"; (2) a patient intake form indicating "constant pain on the lower back, hips bilateral, bilateral knees" and complaints of "constant pain"; (3) Plaintiff's obesity; (4) whether Plaintiff's impairments were the medical equivalent of a listing as defined in 20 C.F.R. § 416.926 or whether they fall within the scope of an analogous listing (Plaintiff does not indicate which listings, however); and (5) Plaintiff's then-not-pending SSI application.[1] Plaintiff also argues that the ALJ did not adequately explain his credibility findings. (*See* 9.1(d) Statement, Doc. No. 6.)

## II. LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative

---

[1] Plaintiff makes no effort whatsoever to explain the import of an SSI application filed *after* the hearing occurred, and we thus decline to address this question.

record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

### A. The ALJ Gave Due Consideration to the Evidence and Effects of Plaintiff's Combined Severe Impairments

Plaintiff first argues that the ALJ's analysis was "conclusory" and misapplied the third step of the disability determination, which requires the ALJ to determine whether a claimant's

6

impairments are among or equal a listed impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). An ALJ's decision must provide "sufficient development of the record and explanation of findings to permit meaningful review," *Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004), and Plaintiff argues that did not happen. We disagree. Our review of the decision and the underlying record indicates the ALJ clearly contemplated Plaintiff's medical history. Plaintiff's argument is itself conclusory and vague, and this Court is unable to discern with any precision what difference reviewing the "combined effect of [Plaintiff's] impairments" would make to the third step's analysis. We see no merit to the argument that the decision failed to consider the evidence of these impairments.

### B. The ALJ Did Not Err in Finding Plaintiff's Depression Non-Severe

Plaintiff next argues that the ALJ erred in finding Plaintiff's dysthymia (i.e., persistent depressive disorder) was not severe under the second step's disability determination, which evaluates whether an impairment is among those in the listings. 20 C.F.R. §§ 404.1520. Plaintiff argues that the ALJ improperly discredited Plaintiff's credibility, and that the ALJ also did not give enough weight to a psychiatric consultation the Plaintiff underwent. In short, Plaintiff argues that the ALJ erred at this stage by not considering enough evidence speaking toward some or other listing Plaintiff has declined to identify, and the error contaminated the rest of the analysis. We disagree.

Plaintiff is mistaken as to the scope of the obligation the regulations impose on the ALJ at this stage in the disability analysis. The listings are a screening device that identifies those claimants whose medical impairments are so severe that they are deemed disabled regardless of their vocational background. 20 C.F.R. § 404.1525(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). The medical criteria are set at a higher level than the statutory standard for

disability, *Zebley*, 493 U.S. at 528-32, and to be found presumptively disabled, a claimant must show that all of the criteria for a listing have been met. *See* 20 C.F.R. § 404.1525(c)(3) ("your impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement"). Proving an impairment falls within the listings is a burden falling on the plaintiff. *Zirnsak*, 777 F.3d at 611-12.

Despite this burden, though, Plaintiff asserts that the ALJ was under a duty imposed by SSR 96-2p to contact "her [sic] treating physicians for additional information or request a consultative evaluation." (Pl. Br. at 20.) This, however, misstates the law. At the time of the ALJ's decision, recontacting a medical expert was discretionary, and "this action is necessary only when the evidence received is 'inadequate' for making a disability determination." *Bryson v. Comm'r Soc. Sec.*, 639 F. App'x 784, 787 (3d Cir. 2016); *see also id.* at 787 n.8. The ALJ had no duty to contact medical experts for further information, and also had an adequate basis for reaching his determination.

Plaintiff has simply not identified which listings his dysthymia may have addressed or been equal to. *See McConnell v. Astrue*, 2010 WL 2925053, at *5 (W.D. Pa. July 20, 2010) ("McConnell makes no attempt to explain the precise basis for his belief that his impairments equaled Listings 12.04 and 12.06. . . . He makes no direct reference to the specific criteria enumerated in Listings 12.04 and 12.06.") (citing *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999)). And Plaintiff has not shown how his disability could have fallen, let alone did fall, within the listings. As the listings impose a higher standard for disability than does the RFC inquiry, we fail to see how any possible injury could have flowed downstream from this that would negatively impact the RFC determination. *See Coy v. Astrue*, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) ("No principle

of administrative law 'requires that we convert judicial review of agency action into a ping-pong game' in search of the perfect decision.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)). We see no reason to disturb the ALJ's finding when "the burden of showing an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). That burden has not been met.

### C. The ALJ Conducted a Full RFC Assessment

Finally, Plaintiff argues that the ALJ did not conduct a full RFC assessment, arguing the ALJ failed to consider and explain all pertinent evidence, including evidence of Plaintiff's obesity, in making his decision. Once again, we disagree. The ALJ relied on descriptions of Plaintiff's time in the emergency room; a 2013 psychiatric consultation; X-rays showing mild osteophytes in Plaintiff's spine, mild osteoarthritis, and normal knees; and evidence of Plaintiff injuring himself after a fall. (Tr. 36-46.) Indeed, Plaintiff appears to have said he was not disabled during the time period he claims he was disabled. (Tr.11-12.) This undermined Plaintiff's credibility, and the ALJ factored that into his decision-making when he concluded Plaintiff could still do sedentary work. It is not this Court's place to re-weigh the evidence or engage in de novo review, *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), and we defer if the ALJ had substantial evidence to reach his RFC determination. He did.

### IV. CONCLUSION

For the reasons stated above, we will not disturb the ALJ's findings. **AFFIRMED**.


Dated:   11/01/2017                             s/ Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United States District Judge